IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

KATRINA FITZGERALD                                                                    PLAINTIFF

V.                                          5:19CV260 JM

U.S. STEEL OIL WELL SERVICES,
LLC and UNITED STEELWORKERS
INTERNATIONAL UNION (USW)                                                        DEFENDANTS

## ORDER

Pending are the Defendants' motions for summary judgment. Plaintiff has responded to both motions and the Defendants have filed replies. For the reasons set forth below, the motions are granted.

I.    Facts

Plaintiff began working for U.S. Steel Oil Well Services, LLC ("U.S. Steel") in February 2017 at its Wheeling Machine Products plant in Pine Bluff, Arkansas.[1] Plaintiff was a member of the United Steelworkers International Union (the "Union") during her employment at U.S. Steel. U.S. Steel and the Union were parties to a collective bargaining agreement ("CBA").[2]

In accordance with the provisions of the collective bargaining agreement, U.S. Steel adopted an attendance policy. The attendance policy provides that "an employee who has just cause to be absent or tardy [] must contact his or her supervisor a minimum of two (2) hours

---

[1] Plaintiff has not complied with Local Rule 56.1(b). She has filed a response to the Defendants' Statements of Undisputed Facts but she does not controvert the Defendants' statements. Most of Plaintiff's responses are merely quotes from depositions that are not necessarily relevant to the Defendants' Undisputed Facts.

[2] The 2015 Basic Labor Agreement was the governing collective bargaining agreement when Plaintiff was hired. In 2018, US Steel and the Union entered into a new collective bargaining agreement. There is no dispute that the relevant provisions of the 2015 and 2018 BLA are substantively the same.

1

before the start of his or her shift, unless unusual circumstances would prevent such notification."(Attendance Policy, ECF No. 24-4). Plaintiff signed a copy of the attendance policy when she was hired. *Id.* The policy has two components. An employee can violate the attendance policy in one way by missing work or being tardy without just cause. And, even if an absence or tardy would be excused for just cause, an employee can violate the policy by failing to notify U.S. Steel at least two hours before the shift that the he will miss or arrive late. (Konrady Dep. ECF No. 24-5 at p. 7-17, 30; Pl. Dep. ECF No. 24-1 at p. 22-25). In determining whether an employee had "just cause" to be absent or tardy, U.S. Steel considers all "relevant circumstances including but not limited to length of service, discipline history and facts surrounding the absence, tardy and/or lack of proper report off." (ECF No. 24-4). If an employee fails to provide at least two hours' notice for being absent or tardy, U. S. Steel considers the same factors in determining whether "unusual circumstances prevent[ed] such notification." (Jones Dep. ECF No. 24-7 at p. 7-8, 26-29). According to Edward Konrady, U.S. Steel's Manager of Employee Services, if an employee who rarely misses work claims that he or she started experiencing health issues less than two hours before a shift, U.S. Steel would probably find that unusual circumstances justified the late notification. Conversely, if an employee frequently gives less than two hours' notice, U.S. Steel would "probably not be as lenient" in finding unusual circumstances. (ECF No. 24-5 at p. 17-18).

    U.S. Steel uses progressive discipline at its Pine Bluff facility. (ECF No. 24-5 at p. 21). Typically, U.S. Steel gives a written warning, one-day suspension, three-day suspension, and five-day suspension before terminating an employee. U.S. Steel does, however, have discretion to bypass steps based on the severity of the employee's infraction. (ECF No. 24-5 at p. 22). The Human Resources department is responsible for determining whether to administer disciplinary

actions to employees. (Cato Dep. ECF No. 24-6 at p. 8-9. 10). Human Resources then notifies the Union and the employee.

The CBA provides employees with a two-step grievance procedure. (ECF No. 24-3 at p. 15-17). In Step 1, an employee must have a Union Grievance Committeeperson submit their grievance in writing to the Labor Relations Department within ten (10) days of the date on which the employee first knew or should have known of the facts of the grieved event. The Grievance Committee and Labor Relations Department must discuss the grievance within fifteen (15) days of its filing. An answer to the grievance must be provided to the Grievance Chair within ten (10) days. The Grievance Chair must inform the Company within five (5) days after receipt of the answer whether the Union accepts or rejects the answer. If the Union rejects the answer in Step 1, the Union may appeal the grievance to Step Two within five (5) days of notifying the Company of the rejection.

In 2018, there was a significant problem with employee attendance at the Pine Bluff plant. U.S. Steel reviewed the administration of its attendance policy and found it lacking. As a result, Ed Kornady began taking a more hands-on approach with administering and enforcing the attendance policy. Konrady told Vince Stetzer, the Human Resource Manager at the time, and other supervisors at the facility that they needed to improve reporting tardiness to Human Resources and follow up with employees who failed to arrive at work on time.

Jed Jones, a Labor Relations Specialist for U.S. Steel, spoke with Stetzer in 2018 regarding the attendance issues and directed Stetzer to enforce the attendance policy. As a result, U.S. Steel, which previously logged only instances where an employee called off work, developed a detailed attendance log that tracked the reason why the employee called off work. U.S. Steel could then ensure that unexcused absences resulted in appropriate counseling or

discipline. On September 4, 2018, Jed Jones traveled to the Pine Bluff plant to discuss U.S. Steel's concerns about attendance with employees. He met with all plant employees, handed out additional copies of the policy and read through it with them. He stressed that U.S. Steel would enforce both the attendance and notification components of the policy.

On September 25, 2018, Plaintiff called in to work 14 minutes before her shift started to notify her supervisor that she would not be at work because she was dizzy and had a headache. She returned to work the next day with a note from her doctor. Plaintiff was issued a written warning for violating the 2-hour call in policy ("Written Warning"). The Union filed a grievance on Plaintiff's behalf. U.S. Steel and the Union began the grievance process regarding the Written Warning with a Step 1 meeting. U.S. Steel rejected Plaintiff's grievance. (ECF No. 24-15 at p. 6).

On November 3, 2018, Plaintiff again violated the attendance policy. (ECF No. 24-16). U.S. Steel escalated its disciplinary action by issuing a one-day suspension for Plaintiff's second attendance policy violation. (ECF No. 24-16 at p. 1). The Union admits that Plaintiff asked for a grievance to be filed and the Union did not comply.

On November 24, 2018, the Union appealed Plaintiff's Written Warning grievance pursuant to Step 2. (ECF No. 24-15 at p. 8). A Step 2 meeting was held on July 31, 2019, after Plaintiff's termination, at which time U.S. Steel denied the grievance. *Id.* at 9.

On January 15, 2019, Plaintiff violated the attendance policy and was issued a three-day suspension. On January 28, 2019, Plaintiff violated the policy for a fourth time and was issued a five-day suspension. Plaintiff claims that she asked the Union to file grievances for these disciplinaries on multiple occasions. Grievances were not filed.

Plaintiff contacted the EEOC about filing a charge against U.S. Steel. She scheduled an appointment for February 1, 2019 and requested vacation for the week of the appointment. U.S. Steel approved the vacation request. However, her supervisor later told her she could not take vacation on February 1st because an employee with more seniority had asked for the same day off. Plaintiff did not report to work on February 1st and kept her appointment with the EEOC. At that appointment she filed a charge of discrimination against U.S. Steel. In the charge, Plaintiff claimed that she was retaliated against for filing a grievance. (ECF No. 24-15 at p. 11). A week later, Edward Konrady requested a meeting with Plaintiff to determine why she did not report to work on February 1st. Vincent Stetzer, Konrady, and Union representative Thomas Coker participated in the meeting with Plaintiff. During the meeting, Konrady determined that Plaintiff should not be disciplined for missing work on February 1st because she had been approved for vacation on that day.

On February 16, 2019, Plaintiff was three minutes late to work because she had trouble getting her daughter to her mother's house. Plaintiff did not call to say that she would be late. A termination notice was prepared for Plaintiff. However, Konrady did not give it to her. The following workday, February 18th, was President's Day. Plaintiff called shortly before the start of her shift to inform her supervisor that she would not be coming to work because her daughter's daycare was closed. Another termination notice was prepared for Plaintiff but not delivered.

A third notice of termination was prepared after Plaintiff failed to follow the attendance policy on February 23rd. Two days prior, February 21st, Plaintiff called in at 4:10 AM before her 5:00 AM shift to say that she would not be at work because of a back injury. She called in again on the evening of the 21st to say that she would not be at work on the 22nd. On February 23rd

Plaintiff did not return to work and she didn't call in until 6:23 AM after her 5:00 AM shift had started, in violation of the 2-hour notice rule of the attendance policy.

On February 25, 2019, U.S. Steel presented all three termination notices to Plaintiff and terminated her employment. Plaintiff asked her Union Grievance Chairperson Kurt Muhammad to file a grievance regarding her termination. The Union did not file a grievance. On May 3, 2019, the Union and U.S. Steel held a Step 2 meeting on Plaintiff's Written Warning grievance. The Union argued that the two-hour call requirement was unreasonable under the circumstance. On July 31, 2019, U.S. Steel denied the grievance and Union President Rosemary Boykin signed U.S. Steel's response. Plaintiff filed another EEOC charge alleging that she was terminated based on her sex and in retaliation for protected activity.

Plaintiff filed suit against U.S. Steel for sexual discrimination, harassment, and retaliation in violation of 42 U.S.C. §1981 and Title VII. She included a claim under Section 301 of the Labor Management Relations Act against U.S. Steel for breach of the CBA and against the Union for breach of the duty of fair representation. Plaintiff's claims for violation of 42 U.S.C. § 1981 have been dismissed. Defendants have filed motions for summary judgment of the remaining claims.

II. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a

> finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, [to] point out to the District Court, that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent s burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

### III. Sex Discrimination

Plaintiff claims she was discriminated against based on her sex. In sex discrimination cases, a plaintiff may survive a defendant's motion for summary judgment in one of two ways. The plaintiff may present "direct evidence of discrimination, that is, evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse

employment action." *Russell v. City of Kan. City, Mo*., 414 F.3d 863, 866 (8th Cir. 2005) (internal quotation marks omitted). Alternatively, if the plaintiff lacks direct evidence of discrimination, the plaintiff may survive the defendant's motion for summary judgment by creating an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff bears the burden of establishing a prima facie case of discrimination. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). The establishment of a prima facie case creates a presumption of unlawful discrimination, which in turn requires a defendant to come forward with evidence of a legitimate, nondiscriminatory reason for the defendant's actions. *Id.* If the defendant articulates such a reason, the burden returns to the plaintiff to show the defendant's proffered reason is pretextual. *Id.*

To establish a prima facie case of sex discrimination a plaintiff must show that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. Plaintiff cannot make a prima facie case of sex discrimination based upon her termination because she was not meeting U.S. Steel's legitimate job expectation as stated in its attendance policy. Plaintiff was cautioned in her 2016 and 2017 employee evaluations that she had an absentee issue which she needed to correct. From September 2018 when U.S. Steel began strictly enforcing its attendance policy at the Pine Bluff plant to February 25, 2019, Plaintiff was absent, tardy or left work early 29 times. (ECF No. 24-12 at p.2-3). "[R]egular and reliable attendance is a necessary element of most jobs." *Nesser v. Trans World Airlines, Inc*., 160 F.3d 442, 445 (8th Cir. 1998). Plaintiff does not dispute the fact that she violated the policy. She only argues that the disciplinaries were not appropriate for her

8

violation and that men at the plant were allowed to come and go as they pleased without consequence.

"[T]he employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination. Title VII prohibits intentional discrimination based on certain, discreet classifications; it does not prohibit employment decisions based on other factors, such as job performance, erroneous evaluations, personality conflicts, or even unsound business practices." *Rose–Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998) (internal citations omitted). It is not the Court's place to tell employers how to implement their attendance policies as long as they are not implemented on the basis of discriminatory animus.

Even if Plaintiff could show that she was meeting U.S. Steel's expectations, she has failed to demonstrate that U.S. Steel treated similarly situated male employees differently. "Plaintiff must show that she and other employees were 'similarly situated in all relevant respects and yet she received a more severe punishment for committing substantially the same offense.'" *Barbee v. Cent. Parking Sys., Inc.*, 2008 WL 5101008, at *7 (E.D. Mo. Nov. 26, 2008), aff'd, 356 F. App'x 913 (8th Cir. 2009) (citing *Russell v. TG Missouri Corp.*, 340 F.3d 735, 745 (8th Cir. 2003)). To demonstrate that an employee is similarly situated, "the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000) (citation omitted). Plaintiff has failed to provide sufficient evidence to demonstrate that similarly situated male employees

were given more lenient treatment with regard to U.S. Steel's attendance policy. Therefore, Plaintiff cannot meet her burden of proving a prima facie case of race discrimination.

IV. Retaliation

"A prima facie case of retaliation discrimination requires a showing that plaintiff engaged in conduct protected by Title VII and suffered an adverse employment action that was 'causally linked to the protected conduct.'" *Tenkku v. Normandy Bank*, 348 F.3d 737, 742 (8th Cir. 2003) (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999)). Plaintiff engaged in a protected activity when she filed her charge with the EEOC and she certainly suffered an adverse employment action when she was terminated. To prove that the two were causally connected, Plaintiff points out that U.S. Steel was aware that she had filed the EEOC charge and there was close temporal proximity between the filing of the charge and her termination.

The problem with Plaintiff's temporal proximity argument is that she had been reprimanded for her failure to follow the attendance policy at least as early as 2016. "Evidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity." *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002) (citing *Smith v. Ashland, Inc.*, 250 F.3d 1167, 1174 (8th Cir. 2001)). Plaintiff's supervisors listed attendance as a problem for Plaintiff in 2016 and 2017 evaluations. She received disciplinaries for failure to follow attendance policies on at least four occasions before she filed her EEOC charge. Plaintiff has not shown a causal connection between her charge and her termination. Moreover, she has not come forward with any evidence of pretext.

V. Breach of Collective Bargaining Agreement

Plaintiff claims that U.S. Steel breached the 2015 CBA because Plaintiff was terminated

without cause. The Court disagrees. As stated above, Plaintiff was terminated for repeated failure to abide by the attendance policy of U.S. Steel. Although it appears that U.S. Steel has difficulty executing its policy with consistency, there is no evidence that the CBA was breached by Plaintiff's termination.

VI. Union Claims

Plaintiff claims that the Union breached its duty of fair representation when the Union failed to file grievances on Plaintiff's behalf. Plaintiff alleges broadly that the Union failed to protect, assist, and provide her with fair representation. She also claims that the Union conspired with U.S. Steel to bring about the failure of Plaintiff's claims against U.S. Steel.

It is well established that a union has a statutory duty to fairly represent all of its employees as employees' exclusive bargaining representative. *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S. Ct. 903, 909, 17 L. Ed. 2d 842 (1967) An "allegation of mere negligence will not state a claim for violation of that duty." *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 376 (1990). A breach of duty occurs only when a union's conduct is arbitrary, invidiously discriminatory, or in bad faith.

Plaintiff acknowledges that the Union filed a grievance with U.S. Steel over her Written Warning on October 7, 2018. Within thirty (30) days, the Union and U.S. Steel held a Step 1 grievance hearing. U.S. Steel denied the grievance on November 3, 2018 and the Union appealed under Step 2. This appeal was pending when Plaintiff was terminated by U.S. Steel. She claims that she asked the Union to file grievances after her one-day suspensions, her three-day suspension, her five-day suspension, and her termination and the Union failed to file them. She also states that she was dissatisfied with the Union's representation of her in a meeting with U.S. Steel supervisors on February 1, 2019.

The Union does not dispute that it failed to file grievances after each of Plaintiff's disciplinaries. The Union argues, however, that its failures were merely negligent or misguided, not arbitrary, discriminatory or in bad faith. Union Grievance Chair Kurt Muhammed thought that it was unnecessary to file a grievance over Plaintiff's termination because her Written Warning grievance was still pending at the time. He believed that her termination would be overturned if the Written Warning grievance was successful. Further, Union President Rosemary Boykin stated in her declaration that she signed off on U.S. Steel's Step 2 grievance denial on July 31, 2019 because she was aware that Plaintiff had retained counsel and was preparing to file suit against U.S. Steel. Boykin stated that she believed a civil suit would be "a more effective forum for Plaintiff's claim." (ECF No. 28-2 at p.173).

Plaintiff has not provided any evidence that the Union acted in bad faith with regard to her representation and there is no evidence that the Union conspired with U.S. Steel. Mr. Muhammed and Mr. Coker testified at length about the Union's efforts to represent employees who had been affected by inconsistent attendance policy enforcement. From their testimony, the events surrounding Plaintiff's Written Warning grievance were complicated by changes in U.S. Steel HR supervisors. It appears, also, that there was some confusion in early 2019 as to whether Mr. Muhammed or Mr. Coker were responsible for filing grievances. *See* Coker Dep. ECF No. 32-3 at p. 28-31; Muhammed Dep. ECF No. 32-4 at p. 13, 15-17; Boykin Dep. ECF No. at p.17. In addition, Boykin testified that she and other Union representatives did not have much training regarding their duties. (Boykin Dep. ECF No. 32-5 at p. 53). Muhammed testified that he had never received training on how to process grievances of Union members. (Muhammed Dep. ECF No. 32-4 at p. 8). There is no evidence that Union representatives' conduct was arbitrary,

invidiously discriminatory, or in bad faith. Plaintiff has failed to meet her burden of proof as to her claims against the Union.

In conclusion, Defendant U.S. Steel's Motion for Summary Judgment (ECF No. 24) is GRANTED. The Union's Motion for Summary Judgment (ECF No. 28) is GRANTED. The Clerk is directed to close the case. The trial scheduled for November 1, 2021 is cancelled.

IT IS SO ORDERED this 26th day of May, 2021.

_____
James M. Moody Jr.
United States District Judge